**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **WASTECARE CORPORATION,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **V.** | ) | |
| | ) | 2:11-cv-297-WCO |
| **SHREDDERHOTLINE.COM CO.,** | ) | |
| **R/D COMPUTER SALES AND** | ) | |
| **SERVICES LTD. D/B/A** | ) | |
| **CONNECTING POINT, AND** | ) | |
| **DAN SCOTT BURDA** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| _____ | ) | |

## COMPLAINT

COMES NOW, Plaintiff, WasteCare Corporation, by and through its

undersigned counsel, and sets forth this Complaint for Damages against Corporate

Defendants R/D Computer Sales and Services Ltd. and Shredderhotline.com

Company (hereinafter "Shredderhotline") and Individual Defendant, Dan Scott

Burda (hereinafter "Defendant Burda")

1.

This is a civil action seeking damages for copyright infringement under the

copyright laws of the United States (17 U.S.C. § 101, et seq.); for trademark

infringement under the Lanham Act (15 U.S.C. § 1114); for violations of Georgia's Deceptive Trade Practices Act, O.C.G.A. § 10-1-372.

## **JURISDICTION**

2.

This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. 1121; 17 U.S.C. § 101 et seq.; 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the claims arising under the statutory law of the state of Georgia pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

3.

Upon information and belief, at all times material to this action, each of the Defendants was the agent, servant, employee, alter ego, subsidiary, and/or joint venture of each of the other Defendants; the acts of each of the Defendants were performed in the scope of such relationship; that in doing the acts complained of herein, each of the Defendants acted with the knowledge, permission and/or consent of every other Defendant; and that each of the Defendants aided and/or abetted the other Defendants in the conduct complained of herein.

4.

Defendants are subject to the personal jurisdiction of this Court and venue is proper in this District because Defendants were fully aware that Plaintiff's principal place of business is in this District, and Defendants individually targeted Plaintiff by making commercial use of Plaintiff's copyrighted material for the purpose of competing with Plaintiff in this forum and nationwide.

**PARTIES**

5.

Plaintiff is a Georgia Corporation with its principal place of business in Gainesville, Georgia.

6.

Plaintiff is informed and believes that Defendant Dan Scott Burda is an individual residing, at least for part of the year, in Illinois at 707 Park Street, Streator, Illinois, 61634.  At all times relevant to this action, Mr. Burda owned and controlled, and continues to own and control, Shredderhotline.com.

7.

Shredderhotline.com Company is an Illinois Corporation with its principal place of business at 707 Park Street, Streator, Illinois, 61634.

8.

Service may be perfected upon Shredderhotline.com via Dan Scott Burda, its registered agent.

9.

Defendant R/D Computer Sales and Services d/b/a Connecting Point and IV Net is an Illinois corporation with its principal place of business located at 1622 Fourth Street, Peru, Illinois, 61354.

10.

Service may be perfected upon R/D Computer Sales and Services, Ltd. via Ronald Borelli, its registered agent.

## BACKGROUND

11.

Plaintiff WasteCare Corporation (hereinafter "WasteCare") was formed in order to provide innovative products and services that help businesses streamline waste processing and waste disposal operations. These products include trash compactors, balers, and other types of recycling equipment.

12.

WasteCare has a long history of serving the waste management needs of organizations across the globe as well as pioneering innovative solutions such as

the 'public area trash compactors' which are gaining worldwide acceptance.  This experience in the industry has led to a customer list that includes organizations such as Yum Brands (i.e. Taco Bell and KFC); Walt Disney World, McDonalds Corporation, AFC Corp,  Marriott, Growth Properties, Intel, Anheuser Busch, John Deere, Kellogg's, Frito Lay, AT & T, Honeywell, GE, Shell Chemical  and many others.

13.

WasteCare registered the domain name www.wastecare.com and launched its website in 1997.

14.

In 2001, WasteCare received federal trademark registration number 2438145 for "waste disposal services."  A true and correct copy of WasteCare's trademark registration is attached hereto as Exhibit A.

15.

WasteCare later received Registration No. 3058992 in 2006 for "Consultation Services in the field of waste processing through the use of innovative technologies, streamlining and better resource utilization"; Registration No. 3059147 in 2006 for "Cost Containment and Management Services in the Field of Waste Processing"; and  Registration No. 3650889 in 2009 for "Recycling

of waste and trash." Copies of these trademark registrations are attached hereto as Exhibits B, C, and D, respectively.

16.

WasteCare spent thousands of hours developing content for its website, including numerous training documents and articles about waste management technologies and products.

17.

WasteCare has also spent significant time and energy optimizing the website so that it is easily locatable on search engines such as Google.

18.

WasteCare's address and its Gainesville, Georgia, location were apparent from the website pages.

19.

WasteCare has four Copyright Registrations protecting the text on its website, as follows: Registration TX0007248669 dated November 22, 2010, Registration TX0007250360 dated November 23, 2010, Registration TX0007345618 dated December 12, 2010, and Registration TX0007394035 dated April 28, 2011.  Copies of WasteCare's Copyright certificates of registration are collectively attached hereto as Exhibit E.

20.

WasteCare relies on its website almost exclusively for its advertising efforts. In fact, most of WasteCare's customers learn about WasteCare by locating the company via a search engine. WasteCare relies on its extensive and informative content to impress potential customers with its wide variety of products and its breadth of industry-specific knowledge.

## INITIAL RELATIONSHIP WITH DAN BURDA

21.

In August 2008, WasteCare began communications with Dan Burda, the President of Shredderhotline.

22.

WasteCare President Matthew Kennedy contacted Mr. Burda because he thought that Shredderhotline might be interested in listing its shredders for sale on WasteCare's website.

23.

Mr. Burda was aware that WasteCare was located in Georgia and that it had a successful website that generated significant business.

24.

WasteCare's relationship with Shredderhotline.com eventually soured once Mr. Burda failed to pay for the referrals WasteCare had sent him.

**WASTECARE WEBSITE AND TRADEMARK ARE COPIED BY IVNET/ CONNECTING POINT FOR SHREDDERHOTLINE.COM**

25.

At the direction of Mr. Burda and Shredderhotline, on August 10, more than 900 pages of WasteCare's website content were copied by IVNET and/ or Connecting Point using IVNet's IP address.

26.

At the direction of Mr. Burda and Shredderhotline, on August 17, more than 600 pages of WasteCare's website content were copied by IVNET and/ or Connecting Point using IVNet's IP address.

27.

At the direction of Mr. Burda and Shredderhotline, on September 30, more than 250 pages of WasteCare's website content, including WasteCare's recently reworded homepage, were copied by IVNET and/ or Connecting Point using IVNet's IP address.

28.

At the direction of Mr. Burda and Shredderhotline.com, IVNet and/or Connect Point reposted these WasteCare pages, including metatags and meta data used for search engine optimization purposes, to two webpages found at www.shredderhotline-wastecare.com and www.wastecare-shredderhotline.com (collectively sometimes referred to as "the Infringing Websites").

29.

Both www.shredderhotline-wastecare.com and www.wastecare-shredderhotline.com were hosted by IVNet and registered in August 2010.

**IVNET AND CONNECTING POINT IGNORE TAKEDOWN NOTICES**

30.

On November 12, 2010, Mr. Kennedy discovered the Infringing Websites and realized that Shredderhotline was maliciously using the Infringing Websites to direct many of WasteCare's existing and potential customers to the Infringing Websites.

31.

On November 12, 2010, Mr. Kennedy promptly sent IVNet and Connecting Point a takedown notice pursuant to Section 512(c) of the Digital Millennium

Copyright Act ("DMCA").  A true and correct copy of this notice is attached
hereto as Exhibit F.

32.

Mr. Kennedy realized at that time that IVNet did not adopt, implement, or
inform its subscribers and account holders of its policy to terminate users who
repeatedly infringe others' copyrights, nor did IV Net adopt any standard technical
measures to identify and protect copyrighted works.

33.

Although IVNet and Connecting Point knew that they had maliciously
copied WasteCare's content, they did not comply with the takedown notice.

34.

On November 12, 2010, Mr. Kennedy also sent a takedown notice to Mr.
Burda, believing that perhaps IVNet and/or Connecting point had copied the
websites without Mr. Burda's knowledge.  See takedown notices, Exhibit F.

35.

However, on November 13, 2010, rather than promising to facilitate removal
of the infringing content, Mr. Burda responded that he and Shredderhotline.com
"support our groups who we affiliate ourselves with," and that he did not "see the
problem."  He also noted that he "felt that spidering" would somehow generate

leads for WasteCare.  True and correct copies of these e-mails are attached hereto collectively as Exhibit G.

36.

Mr. Kennedy again implored Mr. Burda to remove the content in numerous additional e-mails.  However, Mr. Burda adamantly refused to remove the infringing content, instead sending numerous e-mails in which Mr. Burda attempted to portray the malicious copying as some sort of entitlement.  Mr. Burda told Mr. Kennedy to "stop complaining" and "shut the f&%$ up," and called the infringement a "joint venture."  Mr. Burda further threatened Mr. Kennedy that he would be a "mean dog" if the matter went to court and that Mr. Kennedy's "attorney would own everything [he has] by the time litigation is over."  True and correct copies of these e-mails are attached hereto collectively as Exhibit H.

37.

Mr. Kennedy sent two additional takedown notices to IVNet and Connecting Point on November 16 and December 3, 2010.  True and correct copies of these notices are attached hereto collectively as Exhibit I.

38.

On two separate phone calls on about November 13th and November 14th, Mr. Kennedy called IVNET to ask for their cooperation in removing the Infringing

-11-

Websites, but IVNet Vice President Jeff Borelli unequivocally refused to remove the Infringing Websites, stating to Mr. Kennedy that IVnet did not want to disturb its business relationship with website owner Dan Burda, who hired IVNet to host approximately 350 of his websites and who always paid IVNet's bills.

39.

Upon receipt of the third takedown notice, but only for a brief period, IVNet and/or Connecting Point removed the infringing content from the Infringing Websites.  However, IVNet and/or Connecting Point promptly republished the infringing content on December 21, 2010.

40.

Rather than comply with the law or show any concern for the intellectual property of WasteCare, IVNet and/or Connecting Point republished the content because they did not want to lose Mr. Burda's business. Moreover, IVNet and/or Connecting Point posted on their website the Infringing Websites as an example of their work in order to attract future customers, and removal of the websites would harm their marketing efforts.

41.

Specifically, Mr. Burda told them to "reinstate" the Infringing Websites in a November 27, 2010, e-mail.  The November 27 e-mail was not compliant with the

DMCA requirements.  In fact, Mr. Burda thanked IVNet and Connecting Point for the "proper action in all aspects … right and wrong . . legal and not legal." A true and correct copy of this e-mail is attached hereto as Exhibit J.

### EFFORTS TO REMOVE INFRINGING WEBSITES FROM SEARCH ENGINES

#### 42.

Because IVNet would not promptly remove the content, WasteCare was forced to seek removal of the infringing websites from numerous search engines, including Google, Bing, Yahoo, Alta Vista, Overture, Ask Jeeves, MSN, and other Microsoft entities.

#### 43.

Such efforts were tedious and time-consuming due to the volume of infringing pages.

#### 44.

For example, these efforts required tediously cataloging, cross-referencing, organizing and number-coding each and every page of infringing content and listing the 1,200+ infringing URL's  to each search engine company in a manner and format acceptable to that company. The 1,200 URL's occurred as a result of two infringing websites plus the PDF webpages, which of course all had different URL's to try to pinpoint and cross–reference back to WasteCare's website.

45.

In addition, WasteCare had to catalogue and cross-reference all of the images from all of the infringing pages as a completely separate task.

46.

On each respective DMCA claim (of which there ended up being several) WasteCare made numerous attempts and re-attempts at submissions that routinely averaged 25-30 pages of information at a time in either Word format with tables, excel spreadsheets, pdf's, and/or huge email strings involving literally hundreds of pages so that the DMCA claim could be received in an acceptable format for processing.

47.

This exhausting URL submission and re-submission process with the search engines in itself required nearly full time, non-stop attention for several weeks in an effort by both the search engines and WasteCare to determine the best way to transmit the information so that it could be processed properly by the search engines.

48.

Indeed, at that time, none of the search engines had a way to upload / import the information to their servers because this magnitude of infringement is unheard

of. Even the representatives from Google had difficulty in determining how best to

proceed, as they had never dealt with such voluminous infringement.

49.

Moreover, as additional URL's were being indexed by the search engines

and showing up in the search results of the infringing websites it created a moving

target of URL's that had to be accounted for on a daily basis and updated

frequently with the search engines. Thus, WasteCare had to provide follow-up lists

of new URLs to the search engine companies, sometimes as often as three to six

times per search engine.

50.

Because Defendants would not promptly remove the content, WasteCare

was forced to file and follow-up on numerous claims of Trademark Infringement

(including registrar GoDaddy  and others) resulting from the extensive use of

WasteCare's registered trademark throughout the infringing websites.  This effort

took many hours away from the business.

51.

Because Defendants would not promptly remove the content, WasteCare

was forced to spend significant time and energy not only communicating with

IVNet management and Dan Burda, but also with trusted friends, lawyers,

-15-

consultants, online forums, law enforcement agencies, government assistance

centers, as well as additional time researching remedies available under the law.

52.

Again, significant resources were diverted from the business in an effort to

seek a resolution to the massive infringement.

53.

Only after WasteCare expended the financial resources to retain counsel

were IVNet and Connecting Point persuaded to remove the Infringing Websites.

54.

WasteCare has suffered not only significant actual damages, but Mr Burda

has stated that his intentions are to copy WasteCare's website again.  Indeed, on

February 25, 2011, Mr. Burda told WasteCare's counsel that "we will eventually

launch back on the internet a full example of the wastecare-shredderhotline website

for instructional and educational purposes." A true and correct copy of this

correspondence is attached hereto as Exhibit K.

## COUNT I

## DIRECT COPYRIGHT INFRINGEMENT AGAINST SHREDDERHOTLINE.COM, DAN BURDA, AND R/D COMPUTER SALES AND SERVICES LTD.

55.

The WasteCare website text is an original work of authorship entitled to federal copyright protection and is the subject of four copyright registrations.

56.

Defendants' unauthorized copying of the WasteCare website text violated WasteCare's exclusive right of reproduction under Sections 106(1) and 501 of the Copyright Act, 17 U.S.C. § 106(1) and § 501.

57.

Defendants' creation of an unauthorized derivative work based on WasteCare's website text violated WasteCare's exclusive right to prepare derivative works under Sections 106(2) and 501 of the Copyright Act, 17 U.S.C § 106(2) and § 501.

58.

Defendants committed the acts of infringement willfully and in knowing disregard of WasteCare's rights.

59.

As a result of Defendants' acts of infringement alleged herein, WasteCare has sustained substantial injury, loss, and damage to its copyright interest in the WasteCare website text.

60.

Pursuant to Section 504(b) of the Copyright Act, 17 U.S.C. § 504(b), WasteCare is entitled to recover from Defendants the damages it has sustained and will sustain, and any profits obtained by Defendants as a result of or attributable to the infringement,  At present, the amount of such damages and profits cannot be fully ascertained by WasteCare.

61.

Pursuant to Section 504(c) of the Copyright Act, 17 U.S.C. § 504(c), WasteCare is entitled to recover from Defendants statutory damages up to $150,000 per act of infringement.

62.

Pursuant to Section 505 of the Copyright Act, 17 U.S.C. § 505, MedAssets is entitled to recover its costs of litigation (excluding attorney's fees).

## COUNT II

## CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT AGAINST R/D COMPUTER SALES AND SERVICES LTD.

63.

R/D Computer Sales and Services Ltd (hereinafter "R/D") had knowledge that the WasteCare website text was copyright and/or owned by WasteCare.

64.

R/D knew that Shredderhotline.com was downloading the WasteCare text without authorization or permission.

65.

R/D induced, caused, or materially contributed to the direct infringement of the WasteCare website text by providing the hosting services for the downloading of the software.

66.

R/D supervised the downloading of the WasteCare website text.

67.

R/D had a direct financial interest in the infringement because it was concerned it would lose Dan Burda's and Shredderhotline.com's business in the future if it did not cooperate in the infringement.

68.

R/D does not qualify for the DMCA safe-harbor provisions for qualifying on-line service providers because it did not adopt, implement, or inform its subscribers and account holders of its policy for providing termination of users who are repeat infringers pursuant to 17 U.S.C. § 512(i).

69.

R/D also does not qualify for the DMCA safe-harbor provisions for qualifying on-line service providers because it did not adopt standard technical measures to identify and protect copyrighted works pursuant to 17 U.S.C. § 512(i).

70.

R/D also does not qualify for the DMCA safe-harbor provisions for qualifying on-line service providers because it did not designate an agent for notice purposes pursuant to 17 U.S.C. 512(c).

71.

R/D also does not qualify for the DMCA safe-harbor provisions for qualifying on-line service providers because it did properly respond to Mr. Burda's improper attempt at counter-notification pursuant to 17 U.S.C. 512(f).

## COUNT III

### TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1) AGAINST SHREDDERHOTLINE.COM, DAN BURDA, AND R/D COMPUTER SALES AND SERVICES LTD.

72.

Plaintiff owns exclusive rights in and to U.S. Trademark Registration Nos. 3058992, 3059147 and 3650889.

73.

Defendants' use in commerce of the WASTECARE trademark by registering and using the domain names www.shredderhotline-wastecare.com and www.wastecare-shredderhotline.com was likely to cause confusion, or to cause mistake, or to deceive.

74.

Defendants' use in commerce of the WASTECARE trademark by registering and using the domain names www.shredderhotline-wastecare.com and www.wastecare-shredderhotline.com was an intentional attempt to trade off the goodwill of WasteCare.

75.

Defendants' conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

76.

Defendants' acts of infringement have been and continue to be knowing, willful and intentional.

77.

As a direct and proximate result of Defendants' trademark infringement, WasteCare has suffered damages in an amount to be determined at trial.

78.

Pursuant to Section 35 of the Lanham Act, 15 U .S.C. § 1117(a), WasteCare is entitled to monetary damages, Defendants' profits, costs, and prejudgment interest .

79.

This is an exceptional case under Section 35 of the Lanham Act, 15 U. S .C. § 1117(a), entitling Plaintiff Unique to recover its attorneys' fees and up to three times its actual damages.

# COUNT IV

## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT UNDER O.C.G.A. § 10-1-372  AGAINST SHREDDERHOTLINE.COM, DAN BURDA, AND R/D COMPUTER SALES AND SERVICES LTD.

80.

Defendants' use in commerce of the WASTECARE trademark by registering and using the domain names www.shredderhotline-wastecare.com and www.wastecare-shredderhotline.com was likely to cause confusion or misunderstanding as to the affiliation, connection, or association of Defendants with WasteCare.

81.

By adopting WasteCare's trademarks for identical or similar products in the same channels of trade, Defendants were attempting to pass off their services and products as those of WasteCare.

82.

Defendants' deceptive trade practices were knowing, willful and intentional.

83.

As a result of the foregoing, Defendants caused damage to WasteCare in violation of O.C.G.A. § 1O-1-372.

## COUNT V

## ATTORNEY'S FEES AND EXPENSES UNDER O.C.G.A. § 13-6-11 AGAINST SHREDDERHOTLINE.COM, DAN BURDA, AND R/D COMPUTER SALES AND SERVICES LTD.

84.

Defendants have acted in bad faith, have been stubbornly litigious, and have caused WasteCare unnecessary trouble and expense.

85.

WasteCare is therefore entitled to recover its attorneys' fees and expenses incurred in this action under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff WasteCare Company demands a jury trial on all claims so triable and prays for judgment as follows:

(a) The Court enter judgment that Defendants have engaged in copyright infringement in violation of 17 U.S.C. § 501; trademark infringement in violation of Section 32 of the Lanham Act, 15 U .S.C. § 1114, and deceptive trade practices in violation of the Georgia Uniform Deceptive Trade Practices Act, O .C .G.A. § 10-1-372;

(b) The Court permanently enjoin Defendants, their employees, agents, officers, directors, successors, subsidiaries, and assigns, and all those in active

-24-

concert with them from imitating, copying, using, reproducing, displaying, and/or preparing derivative works based upon WasteCare's copyrighted website text, or otherwise infringing WasteCare's copyrights in any manner, medium, or form;

(c) On Plaintiff's First and Second Claims for Relief, damages WasteCare has sustained as a result of Defendants' copyright infringement, including statutory damages and costs;

(d) On Plaintiff's Third and Fourth Claims for Relief, damages, disgorgement of Defendants' profits, enhanced damages, attorneys' fees, costs, prejudgment interest, preliminary and permanent injunctive relief prohibiting Defendants from further violations of the Lanham Act;

(e) On Plaintiff's Fifth Claim for Relief, attorneys' fees and costs;

(f) On each of Plaintiff's claims for relief, such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

[signatures on next page]

Respectfully submitted this 27th day of October, 2011.

/s/ J. Stephen Mixon, Esq.
J. Stephen Mixon
Georgia Bar No. 514050
Attorney for Plaintiff

MILLAR & MIXON LLC
108 Williamson Mill Rd.
Jonesboro, GA 30236
T: 770.955.0100
F: 678.669.2037
steve@mixon-law.com

/s/ Amanda G. Hyland, Esq.
Amanda G. Hyland
Georgia Bar No. 325115
Attorney for Plaintiff

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
Direct: 678.336.7247
Main: 770.434.6868
Fax: 770.434.7376
ahyland@taylorenglish.com