IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

WASTECARE CORPORATION, :
 :
 Plaintiff and :
 Counterclaim Defendant, :
 : CIVIL ACTION
v. : NO. 2:11-CV-297-WCO
 :
SHREDDERHOTLINE.COM CO. :
and DAN SCOTT BURDA, :
 :
 Defendants, :

## <u>ORDER</u>

The captioned case is before the court for consideration of: (1) plaintiff's motion for entry of statutory damages [131]; (2) defendants' "motions (A) for judgment as a matter of law (renewed) and/or in the alternative for a new trial, and (B) to decline the jury's advisory verdict" [136]; (3) defendants' motion to strike affidavit of Kristine Orr Brown [150]; (4) plaintiff's motion for leave to file a supplemental brief in support of its motion for sanctions against defendants and defendants' counsel [145]; (5) plaintiff's motion for sanctions against defendants and defendants' counsel [96]; (6) defendants' motion for dismissal, and for attorney's fees and costs, regarding plaintiff's abandoned claims [137]; and (7) plaintiff's motion for costs and attorney's fees [138].

## I.     Factual Background

Plaintiff WasteCare Corporation ("WasteCare") first published its website (www.wastecare.com) in 1997 so that it could reach a wider customer base to sell trash compactors, balers, and other types of recycling equipment.  In August 2008, Matthew Kennedy, the President of WasteCare, began communicating with Dan Burda, the President of Shredderhotline.com Co. ("Shredderhotline"), to determine if Shredderhotline would be interested in listing its shredders for sale on WasteCare's website.   Shredderhotline agreed and provided photographs of its shredders to WasteCare for posting on WasteCare's website.  WasteCare then began providing sales leads to Shredderhotline in return for a fee.  This continued until August 2010 when the relationship between WasteCare and Shredderhotline soured.

In August 2010, Mr. Burda authorized the republication of the entire WasteCare's website under Shredderhotline's own domain names, www.shredderhotline-wastecare.com and www.wastecare-shredderhotline.com (the "Websites").  On November 12, 2010, WasteCare began sending takedown notices to Shredderhotline and its web hosting company, insisting on the immediate removal of the Websites.   At some point thereafter, Shredderhotline's web hosting company removed the Websites.  On  December 21, 2010, after they had been down for nearly

a month, the Websites were republished.  After WasteCare retained counsel to send

another takedown notice, the Websites were removed on or about January 4, 2011.

On October 27, 2011, WasteCare commenced the present action against

Shredderhotline and Mr. Burda seeking damages for copyright infringement (17

U.S.C. § 101, *et seq.*), trademark infringement under the Lanham Act (15 U.S.C. §

1114), and violations of Georgia's Deceptive Trade Practices Act (O.C.G.A. § 10-1-

372).   On December 29, 2011, defendants answered the complaint, and

Shredderhotline filed six counterclaims.

On August 11, 2012, Mr. Kennedy discovered that both of the Websites had

been reactivated and were redirecting to Shredderhotline's website.  After WasteCare

filed a motion for leave to supplement its complaint to add a claim for cyberpiracy

under 15 U.S.C. § 1125(d), defendants caused the Websites to stop redirecting to

Shredderhotline's website.

In its order of September 20, 2012, this court dismissed all counterclaims except

for the claim for false advertising.  In that order, this court also entered summary

judgment in favor of WasteCare on the issue of defendants' liability for copyright

infringement, trademark infringement, and violations of Georgia's Deceptive Trade

Practices Act, finding that defendants' fair use defense did not apply.  The court

further found that WasteCare was not entitled to statutory damages under the

Copyright Act and was not entitled to recover "profits" under the Copyright Act and the Lanham Act but accepted WasteCare's election of statutory damages for its claim under 15 U.S.C. § 1125(d).   The court permitted WasteCare to proceed with a supplemental claim under 15 U.S.C. § 1125(d).

In its order of June 11, 2013, this court granted plaintiff's summary judgment motion as to defendants' counterclaim for false advertising, denied summary judgment as to plaintiff's supplemental claim for cyberpiracy under 15 U.S.C. § 1125(d), and dismissed defendants' supplemental claim for fraud.

From August 19, 2013 to August 21, 2013, a jury trial was held on plaintiff's supplemental claim for cyberpiracy under 15 U.S.C. § 1125(d).   The jury found in favor of plaintiff in the amount of $200,000.00.

## II.     Legal Analysis

### A.     Motion for entry of statutory damages

In this case, plaintiff brought two cyberpiracy claims pursuant to the Anti-Cybersquatting Consumer Protection Act (the "ACPA").   15 U.S.C. § 1125(d).   The first claim related to defendants' initial registration and use of the Websites.   Though this claim was not explicitly referred to by the statutory section in the initial complaint, the court construed the complaint to have sufficiently pled a cause of action pursuant to the ACPA to allow for an election of statutory damages.   Plaintiff's

second claim under the ACPA was set forth in its supplemental complaint, which was permitted by the court.  The supplemental claim related to defendants' reactivation of the Websites, which were then redirected to Shredderhotline's website.  Following a three-day trial, a jury found defendants jointly liable for this supplemental claim and awarded $200,000 in statutory damages.

Pursuant to 15 U.S.C. § 1117(d), plaintiff elected to pursue statutory damages for each of the cyberpiracy claims.  That section provides:  "In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just."  15 U.S.C. § 1117(d).  A review of the case law indicates that despite the explicit language in the statute, the Eleventh Circuit has upheld statutory damages awarded by both a jury and judge. *See St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1204-06 (11th Cir. 2009) (upholding statutory damages awarded by a jury); *Eagle Hosp. Physicians, LLC. v. SRG Consulting, Inc.*, 561 F.3d 1298, 1303 (11th Cir. 2009) (affirming entry of statutory damages award by a judge under § 1125(d)).

Plaintiff requests that the court enter judgment on both of its cyberpiracy claims including the maximum statutory damages award of $400,000.  Plaintiff argues that

the undisputed facts support this court's award of the maximum $200,000 statutory damages for its initial claim for cyberpiracy just as the jury did for the supplemental claim for cyberpiracy.  The court need not address whether plaintiff is entitled to the maximum statutory damages for its initial cyberpiracy claim because plaintiff has not established defendants' liability as to that claim.  Contrary to plaintiff's assertion, in its order of September 20, 2012, this court did not award plaintiff summary judgment on that claim.[1]  Accordingly, the court hereby denies plaintiff's request to enter a judgment as to plaintiff's initial claim for cyberpiracy under the ACPA.

With respect to plaintiff's request to enter a judgment on a jury verdict as to its supplemental claim for cyberpiracy, defendants have moved to oppose it in their "motions (A) for judgment as a matter of law (renewed) and/or in the alternative for a new trial, and (B) to decline the jury's advisory verdict."  Accordingly, the court will address this issue in conjunction with that motion.

---

[1]  In its order of September 20, 2012, the court awarded summary judgment on plaintiff's trademark infringement claim pursuant to 15 U.S.C. § 1114.  That section prohibits any person from the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a).  This is different from 15 U.S.C. § 1125(d), which protects the owner of a distinctive trademark from another's bad faith intent to profit from the mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark.  *Southern Grouts & Mortars, Inc. v. 3 M Co.*, 575 F.3d 1235, 1243 (11th Cir. 2009).  Plaintiff did not seek summary judgment on its initial claim for cyberpiracy.

### B.      Motion for judgment as a matter of law or for a new trial

In their "motions (A) for judgment as a matter of law (renewed) and/or in the alternative for a new trial, and (B) to decline the jury's advisory verdict," defendants argue that the jury verdict in this case should be reversed because the domain names at issue are not "confusingly similar" to plaintiff's trademark as a matter of law and that the "advisory verdict" should be rejected because the damages amount is "overly-punitive." On a motion for judgment as a matter of law, the court "consider[s] all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party. [The court] then determine[s] whether, in this light, there was any legally sufficient basis for a reasonable jury to find in favor of the nonmoving party." *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1360 (11th Cir. 2010) (internal quotation, citation, and alterations omitted). "That determination is substantially guided by the principle that [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Pensacola Motor Sales Inc. v. Eastern Shore Toyota, LLC*, 684 F.3d 1211, 1226 (11th Cir. 2012) (internal quotation and citation omitted). This "standard is heavily weighted in favor of preserving the jury's verdict." *Id.* In addition, on a motion for new trial, "[n]ew trials should not be granted on evidentiary [sufficiency] grounds unless, at a minimum, the verdict is against the great—not

merely the greater—weight of the evidence." *St. Luke's Cataract & Laser Inst., P.A.*, 573 F.3d at 1200 n.16 (internal quotation and citation omitted).

Defendants argue that the jury's verdict on the cyberpiracy claim was based on erroneous law and not supported by facts. More specifically, defendants argue that the court must vacate the jury's finding that defendants' domain names are "confusingly similar" to plaintiff's trademark. The court disagrees. The legal criterion set forth in the ACPA was presented word-for-word to the jury by counsel during the opening statements and closing arguments, both times in written form on slides for the jury to read. In addition, the jury received the pattern jury instructions for this claim and had the jury instruction in written form in the deliberation room. Finally, as defendants point out, they fully explained to the jury the standards of the "sight sound meaning" test to be applied to determine whether defendants' domain names at issue and plaintiff's trademark are "confusingly similar."

Moreover, as plaintiff points out, the "sight sound meaning" test appears to be used only in traditional trademark infringement analysis where the likelihood of consumer confusion is the ultimate legal question. *See Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999) (holding that the two trademarks "are strikingly similar in sight, sound, and meaning . . . [such that] the . . . comparison reveals the sort of high degree of similarity between marks that

portends a likelihood of consumer confusion").  In claims such as the one at issue, where the question is defendants' bad faith intent to profit from trafficking in domain names containing plaintiff's trademark, the likelihood of consumer confusion is not a factor.  "[F]or purposes of a claim made under the ACPA, '[c]onfusingly similar' is a different standard from the 'likelihood of confusion' standard for trademark infringement."  *Dudley v. HealthSource Chiropractic, Inc.*, 585 F. Supp. 2d 433, 440 (W.D.N.Y. 2008) (internal quotations and citations omitted).  *See also Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 498 n.1 (2d Cir. 2000) (noting that "'confusingly similar' [as applied under the ACPA] is a different standard from the 'likelihood of confusion' standard for trademark infringement").  For purposes of the ACPA, Congress intended "the courts to simply compare the domain name itself to the trademark itself [rather than applying] the traditional and more comprehensive trademark infringement test of 'likelihood of confusion.'"  *Northern Light Technology v. Northern Lights Club*, 97 F. Supp. 2d 96, 117 (D. Mass. 2000).

Furthermore, even if the jury had been required to apply the "sight, sound, and meaning" test and the "anti-dissection rule"[2] as defendants insist, the record shows

---

[2]  To determine the likelihood of confusion under the trademark infringement analysis, the jury must compare "[c]onflicting composite marks . . . by looking at them as a whole, rather than breaking the marks up into their component parts for comparison. . . .  However, it is not a violation of the anti-dissection rule to view the component parts of conflicting composite marks as a preliminary step on the way to an ultimate determination of probable customer reaction to the conflicting composites as a whole."  3  *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition* § 23:41 (2003).

that there was sufficient evidence for a reasonable and fair-minded jury to find that the domain names at issue and plaintiff's trademark were "confusingly similar." A review of the case law indicates that the jury's finding in this case was not unreasonable. For example, in *Frehling Enterprises, Inc.*, 192 F.3d at 1337, the Eleventh Circuit held that "ISG's 'BELL' OGGETTI' mark . . . [and] Frehling's 'OGGETTI' mark . . . . are strikingly similar in sight, sound, and meaning." The Eleventh Circuit further held that "given the striking similarity between Frehling's 'OGGETTI' mark and ISG's 'BELL' OGGETTI' mark, . . . . [t]he inclusion of the words 'Tavola Collection' does little to reduce the danger of that potential confusion." *Id.* In *Pensacola Motor Sales Inc.*, 684 F.3d at 1216, the Eleventh Circuit upheld a jury verdict finding an ACPA violation in a case involving "domain names [that] incorporate[d] trademarks of his competitors." *See also Dudley v. HealthSource Chiropractic, Inc.*, 585 F. Supp. 2d at 440 (concluding that the domain names "'www.healthsource chiropractic.com' and 'www. health sourcechiro. com' are confusingly similar [because t]he names bear a visual resemblance that internet users would reasonably assume that the names were modified, used, approved and/or permitted by the plaintiff"); *Northern Light Technology*, 97 F. Supp. 2d 96, 117-18 (D. Mass. 2000) (holding that "Northernlights is not identical to NORTHERN LIGHT (R) . . . . [but that] northernlights.com is 'confusingly similar' to NORTHERN LIGHT (R)"); *Audi AG v. D'Amato*, 469 F.3d 534, 549 (6th Cir. 2006) (affirming summary judgment where defendant's domain

name incorporated plaintiff's trademark); *Tory Burch LLC v. P'ships and Uninc. Ass'ns*, No. 13 C 2059, 2013 WL 1283824, at *6 (N.D. Ill. Mar. 27, 2013) (finding that "many of the domain names used by Defendants . . . are identical or confusingly similar to Tory Burch's own domain name . . . [because they] incorporate the "Tory Burch" name in its entirety"). The jury's finding on similarity "is factual and must be affirmed if it was based on . . . evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983).

With respect to the amount of the verdict, defendants argue that it should not be adopted because it is merely advisory and that it is unsupported by the evidence. As defendants point out, plaintiff waived its right to a jury trial on the statutory damages in the pretrial order.[3] As a consequence, the court allowed the matter to be submitted to the jury for an "advisory verdict." *See* FED. R. CIV. P. 39(c). This court is not bound by an advisory verdict. *Wilson v. City of Aliceville*, 779 F.2d 631, 636 (11th Cir. 1986).

Contrary to defendants' argument, however, the court finds that the jury's verdict was supported by the evidence. It is not disputed that after downloading

---

[3] In the pretrial order, plaintiff stated: "WasteCare seeks statutory damages pursuant to 15 U.S.C. § 117(d). Such damages are to be awarded by the court, not the jury."

plaintiff's entire website and launching the Websites at issue, defendants deactivated and then reactivated them. After deactivating the Websites the second time, and after this lawsuit was filed, plaintiff discovered that the Websites were redirecting to Shredderhotline's website. Plaintiff presented evidence at trial that prior to the acts giving rise to this lawsuit, it was fielding numerous inquiries from potential customers who had found plaintiff on the internet and were interested in industrial shredders. Plaintiff sent these potential customers to Shredderhotline and expected a referral fee in return. Plaintiff showed that defendants never fully compensated plaintiff for the referral fees owed. Plaintiff argued that the most plausible explanation for defendants' re-use of the infringing domain names was to intercept the web traffic that should have been plaintiff's and to avoid paying plaintiff referral fees. Plaintiff presented sufficient evidence from which a jury could conclude that defendants refused to take down the domain names and intended to divert plaintiff's customers. The court finds that the verdict of $200,000 is not grossly excessive under the facts and circumstances of this case. *See Kiva Kitchen & Bath Inc. v. Capital Distributing Inc.*, 319 F. App'x 316, 320 (5th Cir. 2009) (upholding the district court's maximum statutory award "in light of [defendant's] bad faith intent to divert potential customers to [defendant's] website" where the defendant registered internet domain names that incorporated the owner's trade names and caused internet users seeking the owner's store to be redirected to defendant's website). Statutory damages on an ACPA-cyberpiracy claim

serve "to sanction or punish" the defendant "for his bad faith conduct in order to deter future violations of the ACPA by him." *St. Luke's Cataract & Laser Inst., P.A.*, 573 F.3d at 1205.

For the reasons set forth above, the court concludes that the jury's verdict in this case is supported by facts and law. In addition, because the court considers the jury's award of the maximum statutory damages as just pursuant to 15 U.S.C. § 1117(d), the award is hereby adopted. Accordingly, the court hereby grants plaintiff's request to enter a judgment on the jury verdict as to its supplemental claim for cyberpiracy and denies defendants "motions (A) for judgment as a matter of law (renewed) and/or in the alternative for a new trial, and (B) to decline the jury's advisory verdict."

### C.   Motion to strike affidavit of Kristine Orr Brown

Plaintiff has submitted the affidavit of Kristine Orr Brown in support of its motion for costs and attorney's fees. In the affidavit, Ms. Brown, an outside counsel, rendered her opinion as to the reasonableness of plaintiff's requested attorney's fees and costs. Defendants move to strike the affidavit as inadmissible because Ms. Brown is incompetent. Defendants point out that Ms. Brown does not have any experience in the area of law that is at issue in this case, i.e., the intellectual property fields of copyright law, trademark law, cybersquatting law, or deceptive practices subject matter. Defendants argue that Ms. Brown thus is not competent to determine what constitutes necessary and reasonable work by counsel litigating such matters. In

response, plaintiff asserts that Ms. Brown is competent to testify as to the time and effort reasonably necessary to litigate in federal court. Ms. Brown testified that her "practice focuses on litigation primarily related to employment discrimination, civil rights and personal injury." (Aff. of Brown ¶ 3.) Although an affidavit by an attorney practicing in the area of intellectual property law might have produced more accurate testimony,[4] the court cannot conclude that Ms. Brown's affidavit is entirely unhelpful. Litigating in federal court, regardless of the particular area of the law, involves a certain amount of common procedures and travails. Knowledge in this regard makes Ms. Brown competent to testify as to litigating in federal court. *See Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (holding that "the expert [must be] qualified to testify competently regarding the matters he intends to address").

Defendants also argue that the affidavit is based upon substantial mistakes as to facts. More specifically, defendants take issue with Ms. Brown's testimony that she understood that plaintiff's counsel "was obligated to review hundreds of documents and calculate potential damages suffered by the plaintiff . . . . [and] undertook extensive discovery." (Aff. of Brown ¶ 8.) Defendants contend that this case did not involve any issue of actual or calculated damages because statutory damages had been

---

[4] The court notes that plaintiff also submitted an affidavit of Eric P. Schroeder in support of its motion for costs and attorney's fees. Mr. Schroeder "practices trial and appellate law with an emphasis on intellectual property law." (Aff. of Schroeder ¶ 2.)

elected and did not involve "extensive discovery" as there were only two depositions lasting less than two days.  In response, plaintiff asserts that it initially sought actual damages pursuant to the Copyright Act and Lanham Act but concluded that it would be too difficult to prove them.  In addition, plaintiff points out that preparing for the two-day deposition required, among other things, reviewing 45 banker boxes of documents and thousands of emails.  The court cannot conclude that Ms. Brown's testimony was not based on facts.

Accordingly, the court hereby denies defendants' motion to strike.  The court will determine the appropriate weight to be given to Ms. Brown's affidavit.

### D.   Motion for leave to file a supplemental brief

Plaintiff moves for leave to file a supplemental brief in support of its motion for sanctions.  Plaintiff explains that leave is necessary to present arguments relating to this court's order directing the parties to show cause why they should not be sanctioned, to respond to defendants' request for sanctions contained in their opposition brief, and to address the events occurring after the trial and subsequent to plaintiff's prior brief on sanctions.  Defendants do not directly oppose this motion. In response, defendants have filed their own brief regarding a request for sanctions. For good cause shown, the court hereby grants plaintiff's request.  Briefs from both parties will be considered in conjunction with the motions for sanctions.

### E.    Motion for sanctions

Plaintiff moves the court to award attorney's fees and other additional relief as sanctions.  In support, plaintiff alleges, among other things, that defendants and their counsel, Robert Ward, "have employed, in bad faith, exhausting litigation techniques to harass and intimidate [plaintiff] and its counsel and to grossly expand the proceedings where no real dispute regarding liability ever existed."  Plaintiff argues that defendants filed frivolous motions, counterclaims, and defenses, each intended to expand the proceedings.  In addition, plaintiff states that it was told by Mr. Ward that "his client doesn't have any assets in the United States . . . [that] they have no interest in tr[ying] to settle and [that] if [WasteCare] get[s] a judgment it would not be collectible."  (Tr. of Pretrial Conference Hr'g 3.)  Plaintiff asserts that defendants have deliberately protracted this case and brought it to trial with no intention of honoring a judgment.

In their response brief, defendants request sanctions against plaintiff.[5]   In support, defendants allege, among other things, that plaintiff "fail[ed] to do even the most basic of legal research, and then cavalierly (or intentionally) misrepresent[ed] legal authority to the Court."  More specifically, defendants refer to a footnote in

---

[5]  Defendants did not file a separate motion for sanctions as required.  Federal Rule of Civil Procedure 11(c)(2) provides, among other things, that "[a] motion for sanctions must be made separately from any other motion."  Without condoning defendants' failure to comply with the Federal Rule of Civil Procedure, the court nevertheless will consider their request for sanctions in the interest of addressing all issues on the merits.

plaintiff's brief, which lists four cases allegedly involving Mr. Ward's abusive litigation tactics. Defendants have suggested that the alleged misrepresentation in this footnote warrants sanctions from this court, a libel lawsuit, disqualification, and action from the Georgia Bar. Indeed, Mr. Ward has indicated his intention to file a bar complaint against plaintiff's counsel, Amanda Hyland, in emails sent on at least three separate occasions to approximately ten partners at Ms. Hyland's law firm. (Pl.'s Mot. for Leave to File a Supplemental Br. Ex. B, C, & D.) Defendants also contend that plaintiff has made "unprofessional and sickeningly vicious attack[s and] . . . unbelievable and incredulous allegations." At defendants' request, the court scheduled a hearing and directed both of the parties to show cause why they should not be sanctioned. On October 3, 2013, the court held the hearing.

This court has authority to impose sanctions on the parties and their counsel for various reasons including, but not limited to, unnecessary delay, vexatious multiplication of proceedings, and bad faith conduct. *See* Fed. R. Civ. P. 11(c)(4); 28 U.S.C. § 1927; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Pursuant to Federal Rule of Civil Procedure 11(b), sanctions may be imposed when a pleading is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . [or] the claims, defenses, and other legal contentions are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R.

CIV. P. 11(b).  "[T]he central purpose of Rule 11 is to deter baseless filings in district court and . . . streamline the administration and procedure of federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

In addition, pursuant to § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C.A. § 1927.  The Supreme Court has stated that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (affirming the district court's dismissal of the case for failure to timely answer written interrogatories).

Finally, the court may impose sanctions on parties, counsel, or both pursuant to its inherent judicial power.  "[I]t is firmly established that [t]he power to punish for contempts is inherent in all courts [and t]his power reaches both conduct before the court and that beyond the court's confines." *Chambers*, 501 U.S. at 44 (internal quotation and citation omitted).  This power is derived from the court's need "to

manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43. The power "can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 46. The court may impose sanctions "when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Id.* In *Chambers*, the Supreme Court upheld a sanction of nearly one million dollars in attorney's fees imposed under the district court's inherent power to sanction a litigant for bad faith conduct.

"Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Quantum Communications Corp. v. Star Broadcasting, Inc.*, 473 F. Supp. 2d 1249, 1268-69 (S.D. Fla. 2007). *See Nat'l Hockey League*, 427 U.S. at 643 (affirming the district court's finding of bad faith for failing to timely answer interrogatories). Knowingly false or misleading statements made to the court constitute fraud on the court sufficient to justify the imposition of sanctions. *See In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama On September 22, 1993*, 136 F. Supp. 2d 1251, 1269-70 (S.D. Ala. 2001).

"While bad faith is the key to unlocking the court's inherent power, a court must do more than conclude that a party acted in bad faith; it should make specific findings as to the party's conduct that warrants sanctions." *In re Porto*, 645 F.3d 1294, 1304

(11th Cir. 2011) (internal quotation and citation omitted). *See Byrne v. Nezhat*, 261 F.3d 1075, 1123 (11th Cir. 2001) (holding that "[u]nless the evidence on the issue of bad faith is uncontroverted, a district court should examine a party's conduct and make findings on that issue."); *Rothernberg v. Sec. Mgmt. Co.*, 736 F.2d 1470, 1472-73 (11th Cir. 1984) (remanding for factual findings as to bad faith because "bald assertions provide no meaningful basis for this court to review the ultimate finding of 'bad faith.'"); *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006) (affirming award of sanctions pursuant to bankruptcy court's inherent powers where the court's "sanctions order contained a detailed chronology of [the creditor's] repeated failure[s].").

In support of its motion, plaintiff asserts that defendants and their counsel engaged in bad faith conduct by employing exhausting litigation techniques to harass and intimidate plaintiff and its counsel and to grossly expand the proceedings. More specifically, plaintiff points out that defendants filed six frivolous counterclaims in response to the complaint, which required plaintiff to file a motion to dismiss and a motion for summary judgment. Four of the counterclaims sought declaratory judgments: 1) of non-infringement, invalidity, and unenforceability involving direct copyright infringement and/or contributory infringement; 2) of fraud on the United States Copyright Office; 3) of no federal trademark infringement; and 4) of no unfair trade practices. The fifth was for false advertising, and the sixth was for unfair

competition.  The court dismissed five of the counterclaims finding, among other things, that some of the claims were based on speculation rather than specific facts and that other claims were devoid of factual assertions.  The court permitted the false advertising claim to proceed but noted that the allegations were "far from clear." Subsequently, the court found that no factual basis existed for the false advertising counterclaim.

In addition, while various motions were pending in this case, defendants reactivated the infringing domain names, necessitating plaintiff to move to file a supplemental complaint, conduct additional discovery, file a summary judgment motion, and try the claim.  Defendants then filed a frivolous counterclaim in response to the supplemental complaint.  Defendants also filed an untimely motion for summary judgment that was in large part a motion for reconsideration, despite this court's warning that sanctions would be imposed if defendants were using the additional summary judgment motion as an improper means of seeking reconsideration of the court's earlier order.[6]

Furthermore, despite this court's previous granting of summary judgment in favor of plaintiff on the issue of defendants' liability for copyright infringement,

---

[6]  During a hearing held on January 31, 2013, the court advised: "If I find there has been abuse in this regard, I will *sua sponte* award Rule 11 damages against the defendants. . . . . [i]f I find that [this] is just a re-litigation . . . I will on my own award sanctions against the lawyers. . . .  I will [sanction] against the lawyers and the party. . . . So [Mr. Burda] is on notice he may be included on sanctions against him as well if [Mr. Ward] continue[s] to pursue it and it is meritless as [plaintiff's counsel] says."  (Tr. of Jan. 31, 2013 Hr'g 17.)

trademark infringement, and violations of Georgia's Deceptive Trade Practices Act, defendants refused to engage in meaningful settlement discussions.  Defendants' counsel informed plaintiff's counsel that defendants would not discuss reasonable settlement, in part because they had no intention of ever honoring any judgment entered against them.  For example, in an email dated June 21, 2013, sent to plaintiff's counsel, Mr. Ward stated: "[I]t seems odd that Mr. Kennedy would be pushing for trial against a resident of Canada - - who has no fixed assets in the United States, who markets worldwide, and who sells FOB China? . . . In fact, probably the worst thing that could happen to Mr. Kennedy would be that he would get a big judgment.  This won't happen, of course, but what would he do with it if he had it?"  (Mot. for Sanctions Ex. B.)

In response to plaintiff's motion for sanctions, defendants contend that plaintiff's counsel lied to the court by misrepresenting legal authority in a footnote.  Referring to this footnote, defendants state:  "This Big Lie - - by those who hope to extract money that they have not earned - - is virtually Hitlerian in its scope."  Defendants assert that "[l]ying to the Court is a serious offense, and thus in the interests of justice, the victim here, Mr. Ward, must respectful [sic] request censure against those who perpetrate such violations of decency."  (Defs.' Resp. Br. 8 n.9.)  Defendants further assert that plaintiff's counsel is "deserving of severe sanctions."  (*Id.* at 9.)

To determine whether plaintiff has misrepresented legal authority in the footnote at issue, the court has reviewed each of the four cases cited in the footnote. The first case is *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374 (Fed. Cir. 1994), which is parenthetically summarized by plaintiff as "upholding award of sanction entered by the Northern District of Illinois against Mr. Ward." A close review of the case indicates that this statement is not completely accurate. Though the *Amsted Industries* court awarded attorney's fees for litigation conduct, it was not a "sanction" and it was not against counsel. The court in *Amsted Industries* found that defendant's litigation conduct (which included burdening the court with numerous motions and violating a court order) justified an award of attorney's fees and enhanced damages under the patent statute but did not amount to "sanctionable conduct." While plaintiff's summary of the holding in *Amsted Industries* is not precisely correct, the litigation strategy in that case appears to be somewhat similar to the one here. Although Mr. Ward was not the senior attorney, he admits that he assisted in representing the defendant in that case and presumably was involved in developing the litigation strategy.

The second case is *Carter v. ALK Holdings, Inc.*, 605 F.3d 1319 (Fed. Cir. 2010), which is parenthetically summarized by plaintiff as "upholding sanctions on two of three counts brought by Mr. Ward." Plaintiff's description is inaccurate because though the *Carter* court upheld the district court's finding of frivolity on two

of the three counts, it remanded for a determination of whether sanctions should be imposed.  In fact, the *Carter* court opined that upon remand, it "would reverse the sanctions ruling."  In addition, as plaintiff acknowledged in its supplemental brief, although Mr. Ward represented the plaintiff in *Carter* on appeal, he was not counsel of record in the district court when the complaint was filed.[7]

The third case is *Videojet Sys. Int'l, Inc. v. Eagle Inks, Inc.*, No. 97 C 4504, 1999 WL 637153 (N.D. Ill. Aug. 13, 1999), which is parenthetically summarized by plaintiff as "entering default judgment to punish Mr. Ward."  Plaintiff's description is inaccurate because the holding was against the party and not its counsel.  The last case is *Nicholson v. Shafe*, No. 1:07-cv-02724-BBM, 2008 WL 6722753 (N.D. Ga. Mar. 25, 2008), *rev'd,* 558 F.3d 1266 (11th Cir. 2009), which is parenthetically summarized by plaintiff as "assessing sanction against Mr. Ward that were overturned on appeal."  This statement is accurate.

In its defense, plaintiff states that the footnote at issue was neither intended nor offered as a material basis for sanctions in this matter.  Plaintiff did not suggest that sanctions are warranted in this case because they have been awarded in other cases.  Plaintiff states that the footnote was intended merely to assist this court in assessing a pattern of conduct that plaintiff believes is relevant to the degree of sanctions that

---

[7]  According to Lexis records, Myers & Kaplan, with whom Mr. Ward was associated, is listed as plaintiff's counsel in the district court proceedings in *Carter*.  Mr. Ward, however, did not make an entry of appearance in the case until later.

should be imposed.  With the exception of *Carter*, in each of the cases cited in the footnote, either Mr. Ward's client or his law firm was sanctioned by the district court (though one was overturned by the circuit court) via an award of attorney's fees or a default judgment, Mr. Ward was counsel of record at the time the sanctions were imposed, and the triggering conduct involved a pattern of litigation behavior similar to Mr. Ward's in this case.

Plaintiff further states that footnotes are, by definition, truncated and that each summary was substantially accurate.  For example, in *Carter*, 605 F.3d at 1319, the Federal Circuit held that "the district court correctly determined that counts I and XI are frivolous."  Plaintiff argues that its inference that the sanctions were upheld from this statement was not entirely unreasonable.  To the extent that plaintiff appears to be arguing that it relied on the summaries of cases provided by Lexis, such reliance does not justify plaintiff's inaccuracies in its brief.  Plaintiff's counsel is admonished that it is incumbent upon counsel to correctly summarize the holdings in cases. Substantial accuracy is not adequate.  While the court does not condone plaintiff's mischaracterizations of the holdings in the three of the four cases cited in the footnote, the court is not convinced that they were intentional or egregious.  As set forth above in detail, the court finds that while some of plaintiff's parenthetical summarizations of three of the four cases cited in the footnote are inaccurate and misleading, the court cannot characterize the footnote as "an intentional falsehood through-and-through"

as suggested by defendants.   In light of the admission and acknowledgment of plaintiff's counsel to "accept full responsibility," including correcting the footnote, the court cannot find bad faith on the part of plaintiff and its counsel.   Other than the admonishment set forth above, sanctions are not warranted against plaintiff or its counsel.

In further response to the motion, defendants assert that neither party's counsel should be sanctioned because, among other things, the imposition of sanctions against attorneys would lead to satellite litigation.   The court agrees that the focus of this case must be on the merits, and the court has conducted this case on the merits to the extent possible under the circumstances.   However, the court will not refrain from imposing sanctions if the court determines that they are warranted.   *See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) (holding that "in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where . . . they are clearly warranted.").

Defendants also assert that the court should not impose sanctions in this case because defendants' counsel has apologized to the court and to opposing counsel for "any offense that may have been perceived in the (albeit defensive) remarks that were made in response to WasteCare's motion attacking Shredderhotline's counsel."   The court notes, however, that defendants' counsel has not refrained from making personal attacks on opposing counsel after the apology.   For example, shortly after he

made the above apology, in the same brief defendants' counsel refers to plaintiff's counsel as "contingent fee lawyers" and accuses them of attempting to "obtain personal advantage . . . [and seeking] monetary sanctions . . . so that they could 'share' in this 'bounty' (*qua* booty) pursuant to their contingency fee contract." The court finds that the apology was not sincere.

With respect to defendants and their counsel's conduct, the court finds that there is sufficient evidence in the record to establish bad faith. As set forth in detail above, defendants' refusal to take down the infringing websites until plaintiff sent multiple takedown notices, filing of baseless counterclaims and motions, reactivation of the infringing websites during the pendency of this case, and refusal to engage in meaningful settlement discussions clearly indicate their disrespect for the justice system. As plaintiff asserts, the lengthy litigation involved in this case would have been avoidable had defendants asserted reasonable positions and not re-engaged in the activity that started this dispute. The court also notes that defendants are still defending their actions, which this court and the jury found as constituting violations of the law.[8] In addition, the court found Mr. Ward's conduct during the pretrial

---

[8] Defendants continue to argue, among other things, that their actions in copying and republishing the content of plaintiff's website was fully justified. For example, defendants state that plaintiff "had elected to abandon its mis-pleaded trademark infringement count . . . [because it is] manifestly false [and] utterly fail[s] to state a cause of action." (Defs.' Resp. to Pl.'s Mot. for Attorney's Fees and Costs 10.) In light of this court's having granted summary judgment in favor of plaintiff on the issue of liability on this count, defendants' argument is contemptuous, or at least disrespectful, of the court.

conference, including his tone, demeanor, and facial expressions, to be rude, disrespectful, and unprofessional.

Furthermore, the court finds defendants' response brief to be one of the most offensive pleadings it has ever read.  Defendants describe plaintiff's motion for sanctions as, among other things, "a wholesale attack upon our profession," "a base and overt insult," "hatred-filled," "a slap at every judge," a "despicable attack," and "shocking filth."  Additionally, defendants' brief repeatedly refers to plaintiff's counsel as "contingent fee counsel"[9] and accuses them of, among other things, "seeking unearned money," having a "shameful monetary agenda," "hav[ing] no respect for the truth - or the law- or other members of our profession - or our law-based society," and having "[m]oney [as] their goal."  Defendants state that "[p]ersons of this ilk [i.e., plaintiff's counsel] . . . . should be given to stand down, and the same is requested."  The brief is filled with vicious attacks on and veiled threats to opposing counsel.  As set forth above, defendants' allegations of dishonesty are grossly exaggerated.  While the footnote at issue contained inaccuracies, it certainly was not a "Big Lie . . . Hitlerian in its scope."  Defendants' accusations are baseless and offensive.  Defendants also included gratuitous comments regarding a district judge's

---

[9]  In this regard, plaintiff explains that it could not afford to hire counsel, so its present counsel agreed to take this case on contingency.  The court does not find this to be unprofessional in any way.

personal matters[10] and implied incompetence and/or improper motives on the part of another district judge.[11]   They were entirely unnecessary and disrespectful to the courts.  As defendants state, "[t]here is no substitute for professionalism - and there is no substitute for civility."  The court cannot find a shred of civility in defendants' brief, and it is a disgrace to the profession.

Having found bad faith on the part of defendants and their counsel, the court must now determine the appropriate sanctions warranted by the misconduct.  This court has broad discretion in fashioning sanctions.  *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1305-07 (11th Cir. 2009) (noting that "[h]owever severe the sanctions though, we will not interfere unless important historical findings are clearly erroneous or—by the imposition of sanctions which are not just—there has been an abuse of discretion."); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1536 n.8 (11th Cir. 1986) (holding that this court has "broad discretion in fashioning a contempt sanction.").  The court has "numerous options, among them: a coercive daily fine, a compensatory fine,

---

[10]   Specifically, defendants stated:  "Unfortunately, the District Judge who had there sanctioned the Plaintiff's lawyers (but not Mr. Ward) was in the course of falling prey to the human condition and was later impeached and disbarred for guns, cocaine and sexual indiscretion."  (Defs.' Resp. Br. 8.)  Defendants, among other things, incorrectly state that the district judge was impeached as he, in fact, resigned.  Moreover, none of these facts are relevant to the ruling in that case or this case.

[11]   With regard to this judge, defendants stated:  "Even an excellent and dedicated trial judge can fall prey to the siren song of counsel-with-an-agenda. . . . . "[S]he was reversed for failure to understand the application of [the law.]  Unfortunately, she had been induced to grant sanctions by hyper-aggressive opposing counsel."  (*Id.* at 9-10.)

attorney's fees and expenses to the receiver, and coercive incarceration." *Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1304 (11th Cir. 1991). *See also E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987) (holding that sanctions for civil contempt may be fashioned to compensate a party for losses suffered as a result of the contemptuous act).

Here, plaintiff seeks sanctions to compensate its counsel for the many hours spent dealing with Mr. Ward's intimidation and unnecessary expansion of the proceedings. Plaintiff asks this court to award its attorney's fees incurred in this matter and any other additional relief this court deems appropriate. Plaintiff further specifically requests that any award be assessed against defendants and their counsel, jointly and severally. The court finds plaintiff's request to be justified. An award of reasonable attorney's fees and costs incurred in litigating this case is appropriate under the circumstances of this case. Accordingly, the court hereby grants plaintiff's motion for sanctions against defendants and their counsel, jointly and severally.

### F.    Motion for dismissal and attorney's fees

Defendants essentially argue that any claims originally brought by plaintiff but not listed in the pretrial order are deemed abandoned, and as such defendants are the prevailing party on those claims. Defendants seek an award of attorney's fees and costs in defending all claims except for the claim tried by the jury. In opposition, plaintiff states that it did not abandon any of its claims. The only issue set forth for

30

jury consideration in the pretrial order was liability on the supplemental claim for cyberpiracy. Plaintiff explains that this presentation of a single issue was not because it intended to abandon its earlier claim for cyberpiracy but because it erroneously believed that the court's prior grant of summary judgment was dispositive on liability for all claims except the supplemental claim for cyberpiracy. The court is not persuaded that plaintiff intentionally abandoned any of its claims. In fact, the record shows that plaintiff conducted discovery, filed numerous pleadings, and appeared for hearings, all in accordance with the rules of this court. Because there is no indication that plaintiff failed to prosecute this case or any portion thereof, defendants are not entitled to the requested dismissal pursuant to Federal Rule of Civil Procedure 41(b).

Defendants suggest that this was "a worthless case" because plaintiff cannot prove actual injury or damages and there are no executable assets for the satisfaction of a judgment. Plaintiff points out that at the time it filed the complaint, it had no way of knowing what profits, if any, defendants generated as a result of the infringement. Plaintiff was, however, entitled to conduct discovery into the records of defendants to determine if profits could be ascertained and disgorged. Plaintiff states that discovery was conducted throughout 2012 and included two days of depositions of Mr. Burda and numerous sets of written discovery, including the production of voluminous records from defendants. During discovery, it became apparent that Mr. Burda had no way of knowing which of his customers had found him on the infringing

websites and which of his customers had found him on his legitimate websites, as they all provided the same email address and phone number.  Plaintiff explains that this factual situation rendered lost profits impossible to calculate and resulted in its need to rely on statutory damages.

Contrary to defendants' assertions, a claim is not abandoned merely because it does not carry monetary damages with it.  Plaintiff explains that it was necessary to file this lawsuit to protect its interests because defendants reactivated the Websites and refused to promise in writing to cease the infringing conduct in the future or to compensate plaintiff for the many hours it spent to deactivate the Websites.  Plaintiff requested injunctive relief as well as monetary damages.  Although defendants assert that injunctive relief is improper because the infringing websites have been taken down, plaintiff argues that defendants could repost the infringing websites as they have done previously.  Plaintiff has shown at trial that defendants redirected the websites even during the pendency of this litigation.[12]  Plaintiff has shown that injunctive relief is warranted in this action.

In addition to obtaining the jury verdict on its supplemental claim for cyberpiracy, plaintiff was granted summary judgment in its favor on, among other things, the issue of defendants' liability for copyright infringement, trademark

---

[12]  This matter was fully presented at trial.  As set forth above, the court finds that the jury's finding in this regard is supported by sufficient evidence.

infringement, and violations of Georgia's Deceptive Trade Practices Act. While plaintiff did not recover all available damages, defendants are not the prevailing party in this case.

Defendants' request for attorney's fees and costs is not supported by law or facts. Even construing certain issues to have been abandoned, the court cannot find any indication that the issues were abandoned intentionally or that such abandonment constituted bad faith. As set forth above, to award attorney's fees as sanctions this court must find bad faith. *See Chambers*, 501 U.S. at 49 (holding that "invocation of the [court's] inherent power [to sanction] would require a finding of bad faith"); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (same). Although the alleged abandonment might constitute negligence on the part of plaintiff, there is no evidence of bad faith.

In addition, the facts of this case do not meet the "extraordinary case" requirement justifying an award of attorney's fees under the Lanham Act. That Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Eleventh Circuit has held that "an 'exceptional case' is one that can be characterized as malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (internal quotations and citations omitted). As set forth above, there is no evidence of bad faith

on the part of plaintiff, and defendants are not the prevailing party in this case. Plaintiff's claims of infringement were substantially justified, even if statutory damages were not available.[13]

Finally, to the extent that this court construes plaintiff's copyright and trademark claims to have been abandoned, plaintiff seeks leave to amend the pretrial order to include a determination of damages on the claims upon which plaintiff was granted summary judgment. The Eleventh Circuit has held that "in the interest of justice and sound judicial administration, an amendment of a pretrial order should be permitted where no substantial injury will be occasioned by the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight." *United States v. Varner*, 13 F.3d 1503, 1507 (11th Cir. 1994) (internal quotation and citation omitted). In addition, the pretrial order provides that it can be amended by the court to prevent manifest injustice.

With respect to the copyright and trademark claims, plaintiff has demonstrated the merit of such claims and absence of issues of fact such that the court granted summary judgment. In its order of September 20, 2012, this court granted summary judgment in favor of plaintiff on the issue of defendants' liability for copyright infringement and trademark infringement. Subsequent denial of requested injunctive

---

[13] Defendants' allegation that "[t]he clear reason [for filing this lawsuit] is that this is a contingency fee case" is not factually supported.

relief to plaintiff on these claims would be an injustice as plaintiff has already shown that it is entitled to the relief.  "Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).  Moreover, the court finds that granting injunctive relief would not cause substantial injury or prejudice to defendants or an inconvenience to the court.  Accordingly, the court hereby grants plaintiff's request to amend the pretrial order to include the copyright infringement and trademark infringement claims upon which plaintiff was granted summary judgment.

Accordingly, the court hereby denies defendants' motion.

### G.      Motion for costs and attorney's fees

Plaintiff seeks an award of attorney's fees and costs incurred in this case.  In view of this court's above ruling awarding plaintiff reasonable attorney's fees and costs as sanctions, this request is moot.  Plaintiff requests attorney's fees in the amount of $259,218.12, representing 524.8 hours for plaintiff's counsel Amanda Hyland at $300.00 per hour and 259.8 hours for plaintiff's lead counsel J. Stephen Mixon at $350.00 per hour, and costs in the amount of $10,836.05.  Defendants argue that the amount of the requested attorney's fees and costs are not reasonable.  More specifically, defendants contend that much of the time plaintiff's counsel billed was unnecessary, duplicative, and excessive.

The assessment of what is reasonable is within the sound discretion of the trial court, and the court may utilize its own "knowledge and expertise" in coming to an independent judgment regarding the reasonableness of requested attorney's fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). In assessing the reasonableness of attorney's fee requests, courts must apply the "lodestar approach" and calculate the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by attorneys of reasonably comparable skills, experience, and reputation in the community. *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To satisfy this burden, the fee applicant is required to submit to the court: (1) specific and detailed evidence from which it can determine the reasonable hourly rate for the community, and (2) records evidencing time spent on different claims and setting out with sufficient particularity the general subject matter of the time expenditures so that the court can assess the time claimed for each activity. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

After calculating the lodestar fee, the court must next analyze whether any portion of this fee should be adjusted upward or downward.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986).  In making this determination, the courts have been guided by the following factors:

> (1) the time spent and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitation imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

Defendants do not object to plaintiff's requested hourly rate.  Plaintiff requests an hourly rate of $300.00 for Ms. Hyland and $350.00 for Mr. Mixon.  Plaintiff states that it is seeking compensation at the same rate paid by their counsel's hourly clients. Plaintiff also states that given the knowledge and skill required to manage this case and the local market rates charged by attorneys with comparable experience and skill, the requested rates are reasonable.  *See Gaines v. Dougherty County Bd. of Educ.*, 775 F.2d 1565, 1571 (11th Cir. 1985) (holding that a reasonable hourly rate is based on the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation).  In support,

plaintiff has submitted affidavits from two third-party attorneys who testified as to the reasonableness of the rates. *See Norman*, 836 F.2d at 1299 (holding that evidence of prevailing market rate may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence, including evidence submitted in the form of affidavits from counsel who have performed that type of work). The court finds the requested hourly rates, while reasonable in the Atlanta Division, to be above the rates normally charged by competent counsel in the Gainesville Division.

Defendants object to the number of hours claimed by plaintiff, arguing that it is excessive. Defendants contend that the vast majority of the entries of Mr. Mixon should be disallowed because they are duplicative and involve conversations with co-counsel, Ms. Hyland. "While [the court] recognizes the possibility of unnecessary duplication for which double compensation should not be granted, a reduction is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Johnson v. Univ. College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) (internal quotation and citation omitted). Although defendants have not demonstrated any specific instances where the same work was done unnecessarily by both attorneys, the court is not convinced that the preparation and

38

presence of both attorneys were necessary for the hearings, depositions, conferences and trial at which both attorneys attended.

Defendants contend that plaintiff should have deducted hours for redundancy and inefficiency, which occurred as a result of plaintiff's having been represented by two attorneys. The court agrees. Based on its own experience, knowledge, and observations in this case, the court finds the claimed hours to be excessive. For example, defendants assert that approximately 77 hours claimed by Mr. Mixon in addition to approximately 75 hours claimed by Ms. Hyland for trial preparation for a two-day trial is excessive in light of the fact that this is a relatively simple subject matter.[14] Defendants point out that plaintiff's billing records show that Ms. Hyland spent approximately 110 hours and Mr. Mixon spent approximately 115 hours for trial preparation and at trial between August 11, 2013 and August 22, 2013. In contrast, in this time frame, the billing for defendants' sole attorney, Mr. Ward, is 49.3 hours.

A fee applicant must exercise "billing judgment," that is, "the applicant must exclude from [its] fee application excessive, redundant, or otherwise unnecessary [hours], which are hours that would be unreasonable to bill to a client and therefore

---

[14] Defendants also point out that plaintiff's billing records show that Mr. Mixon spent approximately 56 hours and Ms. Hyland spent over 23 hours at Mr. Burda's deposition and in preparation for the deposition. Defendants assert that the number of hours claimed is excessive. In response, plaintiff states that the number of hours is justified because preparing for Mr. Burda's deposition required reviewing more than 40 boxes of documents produced by defendants, reviewing numerous e-mails between Mr. Burda and Mr. Kennedy, and making a chronology of the documents and e-mails.

to one's adversary irrespective of the skill, reputation or experience of counsel." *Barnes*, 168 F.3d at 428 (internal quotations and citations omitted).  Since plaintiff's counsel performed services pursuant to a contingent fee agreement, the submitted itemized billing records presumably are not sent out to plaintiff with the expectation of payment and are not actual bills.  It is not clear that plaintiff exercised "billing judgment."

Defendants also argue that the billing records contain inconsistencies and indicate manipulation.  Although there are inconsistencies, the court is not persuaded that the billing records are improper *post hoc* creations as defendants suggest. Plaintiff conclusively asserted at trial that there are explanations for each of the inconsistencies.[15]  For example, the time entry for Ms. Hyland on June 10, 2011, states

---

[15]  Defendants also point out the following inconsistencies:

- The time entry for Ms. Hyland on June 15, 2011, states that she spent 3.5 hours for "[m]eeting with S. Mixon and M. Kennedy regarding possible lawsuit and related issues; follow-up meeting with S. Mixon."  The time entry for Mr. Mixon on the same date states that he spent 5.5 hours for "[m]eeting with Matt Kennedy and Ms. Hyland regarding Wastecare v. Shredderhotline; conflicts check; setting up file."

- The time entry for Ms. Hyland on December 1, 2011, states that she spent .7 hours for "[s]ettlement discussions with S. Mixon and M. Kennedy."  There is no time entry for Mr. Mixon for that date.

- The time entry for Ms. Hyland on January 3, 2012, states that she spent .7 hours for "[s]ettlement discussions with client and S. Mixon regarding Ivnet's offer."  There is no time entry for Mr. Mixon for that date.

- The time entry for Mr. Mixon on August 17, 2012, states that he spent 3.5 hours for "[d]iscussions with client, Ms. Hyland re: redirection of websites."  There is no time entry for Ms. Hyland for that date.

that she spent .5 hours for "Emails with S. Mixon and M. Kennedy regarding meeting."  The fact that Mr. Mixon's billing records do not show any entry for that date does not necessarily indicate fabrication because Ms. Hyland may have spent half an hour composing emails and Mr. Mixon may not have spent as much time on the emails and/or neglected to record the time.  The court finds, however, that many of the billing summaries lack details as to the precise time spent on each claim or issue.  For example, Mr. Mixon devoted over 70 hours described as "trial prep."  *See Norman*, 836 F.2d at 1303 (rejecting bare time entries such as "research applicable law" or "review incoming corres.").

    Defendants next contend that a reduction in fees is appropriate in this case because plaintiff did not recover on all the claims included in its complaint.  Plaintiff prevailed on the supplemental claim for cyberpiracy.  No claims were lost at trial, and the jury awarded the maximum statutory damages.  In addition, plaintiff was awarded summary judgment on, among other things, the issue of defendants' liability for copyright infringement, trademark infringement, and violations of Georgia's

---

-  The time entry for Ms. Hyland on March 2, 2012, states that she spent .4 hours to "[r]eview and approve settlement offer to IVNet."  The time entry for Mr. Mixon on that date states that he spent 3.2 hours for "[s]ettlement communications with IV NET; Hyland and Kennedy."

-  The time entry for Ms. Hyland on June 11, 2013, states that she spent 1.7 hours to "[r]eview court's order; emails with S. Mixon and client regarding same."  The time entry for Mr. Mixon on that date states that he spent 2.4 hours to "[r]eview of Ct. Order and discussions with Ms. Hyland and Mr. Kennedy."

Deceptive Trade Practices Act.  As set forth above, the court found that plaintiff also is entitled to injunctive relief.  Plaintiff, however, failed to establish the initial cyberpiracy claim and to recover all available damages, including actual damages for various violations and statutory damages for the initial cyberpiracy claim.  A reduction in fees is warranted.

When a "plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).  In such cases, the "court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.  "[I]f the plaintiff obtained only partial or limited success, the court may reduce the lodestar amount if it believes that amount is excessive in relation to the plaintiff's relief.  That decision rests in the discretion of the district court." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987).  "There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37.

In sum, the court concludes that plaintiff has failed to establish that its requested fee is reasonable.  To account for apparent excessiveness, this court may "mak[e] a simple across-the-board reduction by a certain percentage." *Hudson v. Reno*, 130 F.3d

1193, 1209 (6th Cir. 1997), overruled in part on other grounds, *Pollard v. E. I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001). *See Bivens v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (holding that when a request for attorney's fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."). Such a procedure (in lieu of a line-by-line reduction) is particularly appropriate when, as here, billing records are insufficiently detailed. *See Hisel v. City of Clarksville*, No. 3:04-0924, 2007 WL 2822031, at *6 (M.D. Tenn. Sept. 26, 2007) (pointing out that though cutting hours in this fashion "may appear arbitrary, it is an essentially fair approach and is a practical means of trimming the fat from a fee application.").

After thoroughly reviewing plaintiff's fee request and timesheets, taking into account the issues upon which plaintiff did not prevail and the lack of adequate specific documentation of the time expended by plaintiff on specific issues, the court concludes that an across-the-board reduction of 30% is appropriate. *See Dotson v. City of Syracuse*, No. 5:04-CV-1388 (NAM/GED), 2011 WL 817499, at *32 (N.D.N.Y. Mar. 2, 2011) (reducing fee from $118,000 to less than $44,000 because the plaintiff had a number of claims dismissed and because the plaintiff asked for $1,000,000 in damages and was awarded only $450,000). Accordingly, the court hereby awards plaintiff $181,452.68 in attorney's fees.

Finally, defendants object to plaintiff's proposed bill of costs.  The prevailing party is "prima facie entitled to costs, and it is incumbent on the losing party to overcome that presumption." *Gilchrist v. Bolger*, 733 F.2d 1551, 1556-57 (11th Cir. 1984).  "[T]he discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 230 (1964).  Defendants object to the following three items on plaintiff's bill of costs:  (1) the cost pertaining to transcripts in the amount of $5,736.66; (2) the cost pertaining to fees for service of summons and subpoena in the amount of $982.12; and (3) the cost pertaining to fees for printing in the amount of $689.92.  Defendants argue that plaintiff has failed to identify those items and witnesses that were actually used during the trial.  Defendants point out that plaintiff read only a few deposition lines to the jury and that a relatively small number of exhibits were provided to the jury.

The three items at issue are expressly authorized to be taxed under 28 U.S.C. § 1920.[16]  Furthermore, the courts in this circuit have allowed the cost for obtaining

---

[16]  Under 28 U.S.C. § 1920, a judge may tax as costs, among other things, the following:

   (1)  Fees of the clerk and marshal;

   (2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

   (3)  Fees and disbursements for printing and witnesses.

28 U.S.C. § 1920.

the deposition transcript reasonably necessary in preparation for trial. *United States v. Kolesar*, 313 F.2d 835, 840 (5th Cir. 1963). *See also Daugherty v. Westminster Schools, Inc.*, 174 F.R.D. 118, 124-25 (N.D. Ga. 1997); *DiCecco v. Dillard House, Inc.*, 149 F.R.D. 239, 242 (N.D. Ga. 1993). "[A] deposition taken within the proper bounds of discovery . . . will normally be deemed to be 'necessarily obtained for use in the case,' and its cost will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged." *George R. Hall, Inc. v. Superior Trucking Co., Inc.*, 532 F. Supp. 985, 994 (N.D. Ga. 1982). Defendants do not allege that any of the depositions were improperly taken.

Moreover, there is no requirement that any of the items actually be used during the trial provided that the expenses were reasonably incurred in litigating this case. *See Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1191 (11th Cir. 1983) (noting that "[d]ecisions in the courts of this circuit have awarded expenses reimbursements [sic] liberally as appropriate to the specific litigation."). Defendants do not argue that any of the expenses were unnecessarily incurred. Accordingly, the court hereby awards plaintiff $10,836.05 in costs and expenses.

In sum, the court hereby grants in part and denies in part plaintiff's motion for costs and attorney's fees as specifically set forth above.

### III.    Conclusion

For all the foregoing reasons, the court hereby (1) **GRANTS in part and DENIES in part** plaintiff's motion for entry of statutory damages [131]; (2) **DENIES** defendants' "motions (A) for judgment as a matter of law (renewed) and/or in the alternative for a new trial, and (B) to decline the jury's advisory verdict" [136]; (3) **DENIES** defendants' motion to strike affidavit of Kristine Orr Brown [150]; (4) **GRANTS** plaintiff's motion for leave to file a supplemental brief in support of its motion for sanctions against defendants and defendants' counsel [145]; (5) **GRANTS** plaintiff's motion for sanctions against defendants and defendants' counsel [96]; (6) **DENIES** defendants' motion for dismissal, and for attorney's fees and costs, regarding plaintiff's abandoned claims [137]; and (7) **GRANTS in part and DENIES in part** plaintiff's motion for costs and attorney's fees [138].

More specifically, the court hereby **AWARDS** plaintiff sanctions against defendants and their counsel, jointly and severally, in the amount of $181,452.68 in attorney's fees and $10,836.05 in costs and expenses.  In addition, the court hereby **DIRECTS** the clerk of the court to enter a judgment on the jury verdict dated August 21, 2013, as to the supplemental claim for cyberpiracy in the amount of $200,000.00 and enter a permanent injunction against defendants restraining them from engaging in future infringement of plaintiff's trademark.  Finally, as is the usual

practice of this court where attorney sanctions are involved, the clerk of the court is hereby **DIRECTED to FORWARD** a copy of this order to the State Bar of Georgia.

   **IT IS SO ORDERED**, this 6th day of February, 2014.


                              s/*William C. O'Kelley*
                              WILLIAM C. O'KELLEY
                              Senior United States District Judge