IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

WASTECARE CORPORATION,     :
           :
    Plaintiff          :
           :   CIVIL ACTION
v.               :   NO. 2:11-CV-297-WCO
           :
SHREDDERHOTLINE.COM CO.   :
and DAN SCOTT BURDA,     :
           :
    Defendants.      :

## ORDER

The captioned case is before the court for consideration of (1) plaintiff's motion for sanctions [212]; (2) defendants' motion for relief from judgment [221]; and (3) defense counsel's motion to compel [222].

**I.    Facts**

On February 7, 2014, this court entered judgment for plaintiff in the amount of $200,000.00 against defendants, Shredderhotline.com Co. ("Shredderhotline") and Dan Scott Burda, and in the amount of $181,452.68 against defendants and their counsel, Robert Ward.  Mr. Burda filed an affidavit of indigence seeking to stay execution without posting a supersedeas bond.  In response, plaintiff sought to depose defendants to inquire into the truth of their financial affidavit as permitted under O.C.G.A. § 9-15-2(a)(2).  On May 22, 2014, the court granted plaintiff's request for

post-judgment discovery and directed the parties to appear for an evidentiary hearing on July 17, 2014, to determine defendants' indigence.  During a telephonic hearing held on June 10, 2014, the court ordered defendants to appear for depositions to be held in Atlanta and further ordered that defendants bring two briefcases' worth of financial documents, specifically including bank records and tax returns.  (Tr. of June 10, 2014, hearing, 10-12.)

The depositions were held at the office of plaintiff's counsel on June 30, 2014. Prior to the depositions, defendants' counsel provided seven financial documents to plaintiff's counsel via email the evening before the depositions, consisting primarily of 2011 and 2012 income statements and balance sheets.  Plaintiff states that these documents did not include any bank statements for either defendant, any tax returns from the United States or Canada for Shredderhotline, or the 2013 tax return for Mr. Burda.  When questioned regarding these documents, Mr. Burda testified that he was never told to bring them to the deposition:

> Q. We had specifically asked you about bringing bank statements. And I think the court directed you to bring some bank statements.  Why have those not been provided?
> A.  I wasn't aware of that.
>
> . . . .
>
> Q.  Are there any U. S. Tax returns that were filed on behalf of Shredderhotline.com?
> A.  None that have been supplied.

Q.  But they were filed?
A.  Yes.

. . . .

Q.   What were you told that you needed to do to prepare for today's deposition?
A.  Bring these documents that are here on the table.

. . . .

Q.  Mr. Burda - -
A.  Come up to Canada, go to my bank, ask my accountant, get the documents.
Q.  Mr. Burda, you keep saying you are not hiding anything, but, yet, when we ask you to bring those documents to us, we give you a list of topics - -
A.  I was not told to bring those documents.  I was told to just bring these documents and that is what I sent.  And - -
Q.  Mr. Burda - -
A.  And it was quite a task to get it done.
Q.  Look at plaintiff's Exhibit 1.
A.  I am not going to look at this exhibit.  I was told this is what I was to bring, forget about your exhibits, this is what I was told to bring. I brought it.  I complied.
Q.  You are saying that is what your lawyer told you?
A.  You are going to have to discuss that with my lawyer.

(June 30, 2014 Dep. of Shredderhotline, 69, 71, 109, 112-13.)

Q.  The records that you didn't bring today?
A.  No, I was not told I had to bring those records.  I was told by my attorney that the court said that all I had to do was bring basic financial records and that is all I had to bring.

(June 30, 2014 Dep. of Burda, 21-22.)

3

In addition, plaintiff asserts that during the 30(b)(6) deposition of Shredderhotline, Mr. Burda was unable to answer any basic questions regarding the Shredderhotline financial documents that were provided.  Mr. Burda indicated that he had not prepared for the deposition and had not spoken to his accountant in an effort to learn more about the documents:

> Q. Let's see, we next talked about tax returns, corporate taxes and tax documents generated on behalf of the company for the past five years.  The corporation, have they filed their 2013 tax returns in the United States?
> A. I don't think so.
> Q. Did you check?
> A. No.
>
> . . . .
>
> Q. So, this is under assets, do you see that?  We are looking at current assets.
> A. That is the column it is under, correct.
> Q. So that would mean that this is either a loan where revenue came into the company or it is payments owed to the company, is that what I am - -
> A. I am not the accountant, you would have to ask that to the accountant.
> Q. Okay.
> A. I am not a professional accountant.
> Q. So you have no understanding of what any of these - -
> A. I am not a professional accountant, so, obviously, I do not have a great understanding of this.
>
> . . . .

4

Q.  So, hang on.  So, do you have any idea, the total current assets on plaintiff's Exhibit 3 is $293,420.21, is that money - - is that money that the company has as of January 31st, 2013?

A.  No.  I don't know how the accountants do it.

. . . .

Q.  All right.  It says "owner's contribution, zero," do you see that?

A.  Yes.

Q.   That would mean the owners have put no money into the business?

A.  I don't know, I am not an accountant.  I told you that time and time again.  I am not an accountant.

. . . .

Q.  Did you take any effort to investigate or try to understand this document before you produced it to us?

A.  I am not an accountant and I can't do that.

Q.  Did you meet with your accountant so you could prepare for today's deposition?

A.  No, I did not.

(June 30, 2014 Dep. of Shredderhotline, 38, 47, 48-49, 52-53, 54.)

Furthermore, Mr. Burda could not testify as to whether the balance sheets and income statements he had provided were calculated for Shredderhotline's American corporation or Shredderhotline's Canadian entity:

Q.  Mr. Burda, it is right there.  So, this is the first document that was sent to me and this appears to be a balance sheet for Shredderhotline as of January 31st, 2013; is that accurate?

A.  I don't know if it is Shredderhotline America or Canada.

Q.  Okay.  So, did you - - have you reviewed these documents before you sent them to us?

A.  I looked at them, but I am not an accountant.

. . . .

Q.  All right.  So, according to this, other than that line, do you see anywhere in here that shows any revenue?

A.  Like I said, I am not sure if this is the Canadian corporation or the American corporation.  We would have to find that out.

(*Id.* at 40, 52.)

On the day following the depositions, Mr. Ward emailed certain bank records and tax returns to plaintiff's counsel.  Mr. Ward explained that "these records did not arrive (via air from Canada) until later."  (Mr. Ward's July 1, 2014 letter.)  On July 15, 2014, plaintiff filed its emergency motion for continuance, for sanctions, and to compel.  Plaintiff moved the court to order defendants to properly produce discovery materials and appear at rescheduled depositions, to continue the July 17 hearing on the issue of indigence, and to sanction defendants for their conduct at the June 30 deposition.  After conducting a telephonic hearing, the court rescheduled the evidentiary hearing for August 13, 2014.  After the hearing on August 13, 2014, the court ordered the parties to appear on September 5, 2014, to recommence defendants' depositions.  On September 4, 2014, defendants submitted into the registry of the court a check in the amount of $200,000.00 to cover the supersedeas bond.

Consequently, the depositions scheduled for September 5, 2014, were canceled as unnecessary.

## II.    Legal Analysis

### A.    Motion for sanctions[1]

Plaintiff seeks sanctions pursuant to Federal Rule of Civil Procedure 37(b), which provides that the court may impose sanctions if a party "fails to obey an order to provide or permit discovery."  To warrant sanctions, plaintiff must (1) identify a discovery order or directive and (2) show that the order or directive has been violated. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 n.7 (11th Cir. 1993) (holding that "an oral discovery order is a valid basis for Rule 37 sanctions").  "[Rule 37] gives district judges broad discretion to fashion appropriate sanctions for violations of discovery orders." *Id.* at 1542.  Under Rule 37(b)(2)(C), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey the court's order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).  Here, as plaintiff points out, the court directed defendants in its June 10, 2014 oral order to produce

---

[1] On July 15, 2014, plaintiff filed its emergency motion for continuance, for sanctions, and to compel.  In its order of August 13, 2014, the court denied as moot plaintiff's emergency motion for continuance, granted its motion to compel, and deferred ruling on its motion for sanctions.

their bank statements and tax returns in time for review at Mr. Burda's deposition. Defendants failed to do so.

In opposition, defendants assert that the documents were not intentionally withheld from production. Defendants point out that "immediately" after the June 30 depositions, "a huge number of documents" accompanied by a letter were sent electronically to plaintiff's counsel. The letter dated July 1, 2014, states, among other things, the following: "Unfortunately, some of these records did not arrive (via air from Canada) until later. Also, and as you know, we had sought to transmit some of these files to you during the deposition, but none of us could get the software to work." (Mr. Ward's July 1, 2014 letter.) Plaintiff states, however, that at no point in Mr. Burda's deposition did Mr. Burda or Mr. Ward claim that either was aware of any documents awaiting arrival due to the mail. In fact, Mr. Burda testified that he was "not aware" that any documents other than those already "on the table" were supposed to have been provided. (June 30, 2014 Dep. of Shredderhotline, 69, 109.)

Defendants also assert that the time spent at the June 30 depositions was not "wasted" because it provided plaintiff with an opportunity to determine "what documents memorializing assets exist, and what assets not covered by documents may exist." Nevertheless, as plaintiff points out, it could not inquire about certain documents during the depositions held on June 30, 2014, because they arrived after

the depositions ended.  The fact remains that defendants failed to produce certain documents prior to the depositions as directed by the court and failed to set forth good reasons for their failure.  Defendants have not explained why they could not have produced the documents earlier than the day of the scheduled depositions.  The court finds that defendants have not shown that their failure to comply with this court's discovery order was "substantially justified."  FED. R. CIV. P. 37(b)(2)(C).

In addition, Mr. Burda failed to prepare for the 30(b)(6) deposition.  Federal Rule of Civil Procedure 30(b)(6) requires a corporation served with a deposition notice to "designate one or more officers, directors, or managing agents, or other persons to testify on its behalf."  Rule 37(d) provides that the court may order sanctions "[if] a party or a party's officer, director, or managing agent - - or a person designated under Rule 30(b)(6) or 31(a)(4) - - fails, after being served with a proper notice . . . to appear for that person's deposition."  FED. R. CIV. P. 37(d)(1)(A)(I).  A 30(b)(6) corporate designee's lack of preparation for a deposition is deemed to be a "failure to appear" for purposes of Rule 37(d).  *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (holding that "[w]hen a corporation . . . designates a person to testify on its behalf, [and if] that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available knowledgeable, and readily identifiable witness, then the appearance is, for all

9

practical purposes, no appearance at all"). "Concomitant with a corporation's duty to produce a responsive witness is its duty to prepare the witness so that [he or she] may give complete, knowledgeable and binding answers on behalf of the corporation. . . . A party does not meet his obligations under Rule 26 or 30(b)(6) by figuratively throwing up its hands in a gesture of helplessness." *Otero v. Vito*, No. 5:04-CV-211 (DF), 2006 WL 3535149, at *2 (M.D. Ga. Dec. 7, 2006) (internal quotation and citation omitted). Here, as the transcript of the June 30 deposition clearly shows, Mr. Burda did not prepare for the deposition and was unable to answer questions regarding the finances of his company. He was not even able to identify which company's records he had produced.

Plaintiff argues that Mr. Burda's total lack of preparation was the result of the total lack of guidance from his counsel. Where counsel fails to explain these obligations to his client, counsel may be sanctioned. *See, e.g., Pesaplastic, C. A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1516 (11th Cir. 1986). In his defense, Mr. Ward states that he conveyed to Mr. Burda "the full substance of the court's oral order . . . on what must be produced, and . . . on what could be eliminated from the huge listing of documents that WasteCare had initially sought." More specifically, on June 10, 2014, the date of the telephonic hearing, he sent the following email to Mr. Burda:

We had a hearing today by telephone.  The Judge ruled that the depositions would go ahead <u>in Atlanta</u>, substantially as scheduled. However, he did give some leeway from June 24th - *i.e.*, a day or two, either before or after.

He did cut down considerably on the list of documents to be produced, and specifically ordered: (1) bank records for the past 2 years for the corporation and the individual Dan Burda, (2) the 2012 and 2013 income tax returns for both the corporation and the individual, Dan Burda.

He also ruled that they could question you on all of the categories listed, but you would only have to produce such further documents (including the above items) as could be contained within 2 large brief cases.

He further ruled that, if this initial examination were not sufficient, the Plaintiff could notice a second deposition for Illinois.

The Court also ruled that the Defendants must produce everything that we intend to use at the Hearing to show indigence, or he will not allow it to be used by us.

I also alerted him to the fact that we may have a problem with the Hearing date of July 17, and he seemed favorably disposed.

(Resp. Br. to Mot. for Sanctions Ex. A.)

This email shows that the information Mr. Ward relayed to Mr. Burda was not inaccurate.  This, however, does not necessarily indicate that Mr. Ward fulfilled his duty as defendants' counsel.  As the attorney for the defendant corporation, Mr. Ward has "the duty of producing a witness who will testify concerning the matters which are the subject matter of discovery," and "the duty of advising them to cooperate." *Id.* Although Mr. Ward alleges that he "has been diligent and fair throughout, and has

11

sought to encourage [plaintiff] to conform its conduct to the requirements of the Law," there is no indication that Mr. Ward prepared Mr. Burda in any way for the depositions. For example, Mr. Ward has not alleged that he informed Mr. Burda that Mr. Burda should review the bank statements and tax returns so that he can answer questions regarding them. In fact, Mr. Burda's testimony indicates that he was not so informed. Mr. Burda expressly testified that he "was told by [his] attorney that the court said that all [he] had to do was bring basic financial records and that is all I had to bring." (June 30, 2014 Dep. of Burda, 22.)

Plaintiff requests that defendants' counsel should be sanctioned by being ordered to pay the attorney's fees. Before imposing the sanction of attorney's fees pursuant to Federal Rule of Civil Procedure 37, however, the court will conduct a hearing where both sides can present arguments as to the propriety, amount, and scope of fees.

### B.    Motion for relief from judgment

Defendants seek relief from the judgment in this case one year after trial on the ground that plaintiff committed fraud during the off-the-record discussion among counsel, after which defendants' counsel decided not to use screenshots of plaintiff's website in an effort to impeach plaintiff's president, Matthew Kennedy. During the jury trial of this case between August 19, 2013 and August 21, 2013, defendants'

counsel sought to impeach Mr. Kennedy by showing that plaintiff's website had, at an earlier point in time, displayed images of shredders belonging to Komar Industries ("Komar") (hereinafter referred to as "Komar images").   (Tr. Vol. II 38-43.) Defendants believed that plaintiff did not have permission to publish those images and that the screenshots would be evidence of wrongdoing or lack of credibility on the part of plaintiff.  The trial recessed before defendant introduced the images.

During the trial recess, Mr. Kennedy's wife rushed home to Mr. Kennedy's computer, where she searched his email files and located a copy of an email showing that Joey Walls, the managing principal of Recycling Industries, Inc. ("REI"), provided the Komar images to Mr. Kennedy for plaintiff's use.  Mrs. Kennedy provided the email directly to plaintiff's counsel seconds before the trial resumed. (Resp. Br. to Mot. for Relief from J. Ex. A.)  Plaintiff's counsel then turned the email over to Mr. Ward immediately.  The email indicated that Mr. Walls believed that Komar had given him permission to distribute the Komar images.  (*Id.*)  Upon reviewing the email, Mr. Ward made the decision not to show the jury the Komar images from plaintiff's website or the email from Mr. Walls.

In their motion, defendants produced an affidavit dated August 14, 2014, from Komar's president, Mark Koenig, who states that Komar never gave REI permission to use the Komar images.  (Decl. of Koenig ¶ 4.)  However, the affidavit makes clear

that Komar did not notify REI that it did not have permission to use the images until April 14, 2014 - eight months after the trial.  (*Id.* at ¶ 5.)  The affidavit states that Mr. Koenig also eventually informed Mr. Kennedy that REI had never had permission to sublicense the images to plaintiff.  (*Id.* at ¶¶ 6-7.)  The affidavit further states that upon learning about REI's lack of permission, Mr. Kennedy "took steps to remove Komar graphics and materials from [plaintiff's] website."  (*Id.* at ¶ 8.)  The affidavit does not state that Mr. Kennedy ever displayed Komar images after he knew that Komar had not, in fact, given REI permission to sublicense them.

Federal Rule of Appellate Procedure 60(b) allows the court to provide relief from a judgment on the ground of fraud, misrepresentation, or misconduct.  To prevail on a rule 60(b)(3) motion, the movant must prove by "clear and convincing evidence that an adverse party has obtained the [judgment] through fraud, misrepresentation, or other misconduct."  *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000).  Additionally, the moving party must show that the opposing party's conduct prevented him from "fully and fairly presenting his case."  *Id.*

Here, there is no indication that fraud or misconduct occurred.  The only evidence presented to show fraud is the affidavit of Mr. Koenig.  The affidavit does not support any accusation of fraud or misrepresentation.  Rather, Mr. Koenig's affidavit is consistent with what transpired during trial.  Mr. Kennedy was given the

Komar images from REI, a company that Mr. Kennedy believed to be a Komar distributor.  Mr. Kennedy used the images believing that he had permission to do so. The email from REI supported Mr. Kennedy's belief that he had permission to use them.  After he was informed by Komar that REI did not have such permission, Mr. Kennedy immediately removed the images.  Plaintiff explains that the fact that the images said "Komar" on them is irrelevant because Mr. Kennedy had always believed that the images originated from Komar but that Komar had provided the images for its distributors to use.  Other than their conclusory allegations,[2] defendants have not presented any evidence of fraud that warrants overturning the jury verdict.

Accordingly, the court hereby denies defendants' motion for relief from judgment.

### C.    Motion to compel

During the hearing held on August 13, 2014, plaintiff presented two demonstrative aids to the court.   Specifically, plaintiff's counsel compiled a chronology of certain dates on one foam board and selected quotations from the record on another foam board.  On August 16, 2014, without any prior request or good-faith conference, defendants' counsel filed this motion seeking to have the court compel

---

[2] Defendants alleged, among other things, that plaintiff engaged in an "unconscionable scheme," that Mr. Kennedy told "phantasmagorical stories" to the jury, that Mr. Kennedy committed "serial thefts," engaged in "manipulation and perfidy," and "stained" the "Fabric of Justice" with "blatant fraud."  (Mot. for Relief from J. 4-5.)

15

plaintiff to provide the boards and file them with the court.  In response, on August 19, 2014, plaintiff emailed photographs of the foam boards to defendants' counsel. Plaintiff also filed photographs of the boards on August 27, 2014.[3]

Accordingly, the court hereby denies defendants' motion as moot.

### III.    Conclusion

In sum, the court hereby (1) **DEFERS** ruling on plaintiff's motion for sanctions until after a hearing [212]; (2) **DENIES** defendants' motion for relief from judgment [221]; and (3) **DENIES as MOOT** defense counsel's motion to compel [222].

A hearing to present arguments on plaintiff's motion for sanctions is hereby set for November 12, 2014, at 2:00 p.m. in Courtroom 300 of the United States District Court, Northern District of Georgia, Gainesville Division.

**IT IS SO ORDERED**, this 16th day of October, 2014.


s/*William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge

_____

[3] Plaintiff argues that filing of demonstrative aids is not required by the local rules or the federal rules of civil procedures.